UNITED STATES of America,
Plaintiff,

v.

OPERATION RESCUE,
et al., Defendants.

No. C–3–98–113.

United States District Court,
S.D. Ohio,
Western Division.

March 10, 1999.

Dale Ann Goldberg, United States Attorney's Office, Dayton, OH, for Plaintiff.

Frederick Nelson, American Liberties Institute, Orlando, FL, Christopher Finney, Finney Bacon & Muehlenkamp, Cincinnati, OH, David Langdon, Cincinnati, OH, David Greer, Bieser, Greer & Landis, Dayton, OH, for Defendants.

DECISION AND ENTRY OVERRULING MOTION TO DISMISS (DOC. # 66) FILED BY DEFENDANTS PHILIP BENHAM, RUSTY THOMAS, AND JAMES ANDERSON; DEFENDANT OLIVIA ALAW'S MOTION TO DISMISS (DOC. # 82) OVERRULED; DEFENDANT HEATHER MECHANIC'S MOTION TO DISMISS (DOC. # 83) OVERRULED; PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DOC. # 85) SUSTAINED; PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER (DOC. # 69) SUSTAINED IN PART AND OVERRULED IN PART; MOTION TO QUASH OR MODIFY SUBPOENAS (Doc. # 84) FILED BY THE NON–PARTY WOMEN'S MEDICAL CENTER OF CINCINNATI, WOMEN'S MEDICAL CENTER OF KETTERING, AND DAYTON WOMEN'S SERVICES SUSTAINED IN PART AND OVERRULED IN PART; MOTION TO COMPEL DISCOVERY (DOC. # 95) FILED BY DEFENDANTS PHILIP BENHAM, RUSTY THOMAS, JAMES ANDERSON, DAVID MEHAFFIE, AND OLIVIA ALAW SUSTAINED IN PART AND OVERRULED IN PART; CONFERENCE CALL SET.

RICE, Chief Judge.

This litigation stems from the Plaintiff's allegation that the Defendants violated the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248, in July, 1997, while protesting at three area abortion clinics. (Complaint, Doc. # 1). The following Motions are pending before the Court: (1) a Motion to Dismiss (Doc. # 66) filed by Defendants Philip Benham, Rusty Thomas, and James Anderson; (2) a Motion to Dismiss (Doc. # 82) filed by Defendant Olivia Alaw; (3) a Motion to Dismiss (Doc. # 83) filed by Defendant Heather Mechanic; (4) a Motion to Compel Discovery (Doc. # 85) filed by Plaintiff United States of America; (5) a Motion for a Protective Order (Doc.

# 69) filed by Plaintiff United States of America; (6) a Motion to Quash or Modify Subpoenas (Doc. # 84) filed by the non-party Women's Medical Center of Cincinnati, Women's Medical Center of Kettering, and Dayton Women's Services; and (7) a Motion to Compel Discovery (Doc. # 95) filed by Defendants Benham, Thomas, Anderson, Mehaffie, and Alaw. The foregoing Motions have been briefed, and the Court heard arguments on the Motions during a February 26, 1999, telephone conference call. After reviewing the parties' briefs and considering the arguments raised during that conference call, the Court hereby rules upon the Motions as set forth below.

## I. Motions to Dismiss (Doc. # # 66, 82, 83)

In their Motion to Dismiss (Doc. # 66), Benham, Thomas, and Anderson contend that the Court lacks personal jurisdiction over them because they are out-of-state Defendants, they are not amenable to suit under Ohio's long-arm statute, and the exercise of *in personam* jurisdiction over them would violate the Due Process requirements of the Fourteenth Amendment. In particular, these Defendants argue that they lack a "substantial connection" to Ohio, and that the Plaintiff's Complaint fails to allege a "tortious injury by act or omission in this state," as required to establish personal jurisdiction under the portion of Ohio's long-arm statute cited in the Complaint. The Motions to Dismiss (Doc. # # 82, 83) filed by Alaw and Mechanic incorporate by reference the arguments raised in the Motion to Dismiss (Doc. # 66) filed by Benham, Thomas, and Anderson. Consequently, the Court will address the three Motions together.

### A. Procedure for Ruling on a Rule 12(b)(2) Motion

When considering a motion to dismiss for lack of *in personam* jurisdic-

tion prior to trial, the court can determine the motion on the basis of affidavits alone or by conducting an evidentiary hearing. *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989). Furthermore, the court may permit discovery to aid it in deciding the motion, whether based on affidavits, or by conducting an evidentiary hearing. *International Techs. Consult., Inc. v. Euroglas*, 107 F.3d 386 (6th Cir.1997); *Serras*, 875 F.2d at 1214. The court has discretion to select which method to follow. *Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir.1989); *Serras*, 875 F.2d at 1214.

If the court determines that the motion can be decided without a hearing, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). The plaintiff, however, bears the "relatively slight" burden of establishing the existence of personal jurisdiction. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168–69 (6th Cir.1988). If the plaintiff demonstrates the existence of a prima facie case of personal jurisdiction over the defendant, after reading the pleadings and the affidavit(s) so construed, the defendant's motion will be denied, notwithstanding contrary allegations made by the defendant. *Serras*, 875 F.2d at 1214.

In the instant case, the Defendants have not submitted affidavits in support of their Motions to Dismiss pursuant to Fed. R. Civ. P 12(b)(2). Rather, they contend that the Plaintiff's Complaint fails to allege sufficient facts demonstrating the Court's personal jurisdiction over them. In particular, the Defendants argue that the Plaintiff's allegations do not establish personal jurisdiction under Ohio's long arm statute or under a minimum contacts analysis.

In *Woolpert v. Thiel*, No. C–3–97–129 (S.D.Ohio 1998) (unpublished), this Court recently noted that under Fed.R.Civ.P. 8(a), "a plaintiff has no obligation to specifically allege in the complaint the existence of personal jurisdiction over the defendant." *Id.*, citing *Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir. 1971); *Milwee v. The Peachtree Cypress Investment Co.*, 510 F.Supp. 279, 283 (E.D.Tenn.1977) ("The Defendants submitted no affidavits in support of their contention that this Court lacks jurisdiction over their person.... Rather, they appear to contend merely that the plaintiff failed to state in his complaint any basis for the exercise of jurisdiction over their persons. Of course, it was not necessary for the plaintiff to make any such averments."); 5 Wright & Miller, *Federal Practice and Procedure* 81, § 1206. Therefore, the Defendants may not base their Motion to Dismiss upon the purportedly deficient factual assertions in the Plaintiff's Complaint. Rather, in bringing their Motion, the Defendants were obligated to set forth facts, by affidavit, demonstrating that the Court lacks personal jurisdiction. *Cf. Woolpert; Welsh*, 631 F.2d at 438; *Milwee*, 510 F.Supp. at 283 (finding no lack of personal jurisdiction over defendant when defendant failed to provide evidentiary support for a motion to dismiss). The Defendants have not provided the Court with any such evidence. Instead, they contend that the Plaintiff's factual allegations, even if true, fail to demonstrate the existence of personal jurisdiction over

them. *See* Defendants' Reply Memorandum, Doc. # 90 at 8 ("[T]he very basis of the pending motion to dismiss in this case is that the Plaintiff in this case did not sufficiently allege the necessary 'factual allegations' to survive."). Given that the parties address the merits of the personal jurisdiction issue based upon the facts alleged in the Complaint, the Court will examine those facts in order to determine whether Plaintiff has established a prima facie showing of personal jurisdiction.

■ In resolving this issue, the Court first must determine whether the Defendants are amenable to suit under Ohio's long-arm statute. The Plaintiff's Complaint (Doc. # 1) alleges long-arm jurisdiction under Ohio Rev.Code § 2307.382(A)(3), which states that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's[ ] ... [c]ausing tortious injury by an act or omission in this state." In the present case, the Defendants contend that the Plaintiff's Complaint is fatally deficient because it does not allege a "tortious injury."

The Court finds this argument unpersuasive. When viewed in a light most favorable to the Plaintiff, the Complaint alleges facts from which the Defendants may be found to have caused a tortious injury by their abortion protesting activities in Ohio. Specifically, the Complaint alleges that the Defendants entered clinic property and obstructed access to clinics in Cincinnati and Kettering. (Doc. # 1, at ¶ 22–23, 27–28).[1] While doing so, they ig-

---

1. In relevant part, the Plaintiff's Complaint alleges:

"22. On July 14, 1997, approximately 40 Jane and John Doe Defendants, led by Defendants Thomas, Kemper and Mehaffie, physically obstructed access to the Cincinnati clinic.

"23. Beginning at approximately 8:00 a.m., Defendants entered onto the Cincinnati clinic's property and stood or sat in front of the clinic's two public entrances.

"24. Defendants blocked the entrances to the Cincinnati clinic in this manner for approximately one hour, dispersing only after local police arrived in large numbers. Defendants had previously ignored an order to leave the premises read to them by the clinic director, who was accompanied by the Cincinnati Police Chief.

"25. Through their conduct, Defendants physically obstructed the Cincinnati clinic by rendering access to the clinic impassable or unreasonably difficult or hazardous.

nored orders to leave the premises. (*Id.* at ¶ 24, 29). On another occasion, the Defendants blocked access to a Dayton clinic by standing or sitting on the front edge of the clinic's property. (*Id.* at 33).[2]

■ These factual allegations suggest that the Defendants committed the common-law tort of trespass. This tort occurs "when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue.…" *Apel v. Katz*, 83 Ohio St.3d 11, 19, 697 N.E.2d 600, 607 (1998). Moreover, "Ohio courts recognize that every unauthorized entry upon the land of another constitutes a trespass and regardless of whether the owner suffered substantial injury or not, he at least sustains a legal injury which entitles the owner to a verdict for some damages.… The law conclusively presumes damages in every case of trespass." *Pembaur v. City of Cincinnati*, 745 F.Supp. 446, 456 (S.D.Ohio 1990) (Rubin, J.), citing *Pearl v. Pic Walsh Freight Co.*, 112 Ohio App. 11, 168 N.E.2d 571, 573 (1960), *aff'd*, 947 F.2d 945 (6th Cir.1991) (unpublished table decision). Given that an injury is presumed whenever a trespass occurs, the Plaintiff's Complaint adequately alleges that the Defendants caused a tortious injury by an act or omission in Ohio, thereby establishing personal jurisdiction under the state's long-arm statute.

"26. Through their conduct, Defendants intentionally interfered with or attempted to interfere with Cincinnati clinic employees and clients because these individuals were seeking to provide or obtain, or in order to prevent them providing or obtaining, reproductive health services.

"27. On July 15, 1997, over 100 Jane and John Doe Defendants physically obstructed access to the Kettering clinic. On information and belief, the group was led by Defendants Thomas, Kemper, Mehaffie, Anderson and Benham.

"28. Beginning at approximately 12:45 p.m., Defendants entered onto the Kettering clinic's property and sat in front of the clinic's three public entrances, two in front and one in back.

"29. Defendants blocked the entrances to the Kettering clinic in this manner for approximately 1–1/2 hours, dispersing only after local police began arresting the blockaders. Defendants had previously ignored an order to leave the premises read to them by the police.

"30. Through their conduct, Defendants physically obstructed the Kettering clinic by rendering access to the clinic impassable and unreasonably difficult or hazardous.

"31. Through their conduct, Defendants intentionally interfered with or attempted to interfere with Kettering clinic employees and clients because these individuals were seeking to provide or obtain, or in order to prevent them providing or obtaining, reproductive health services.

"32. On July 16 and 18, 1997, over 200 Jane and John Doe Defendants physically obstructed access to the Dayton clinic. On information and belief, the group was led by Defendants Thomas, Kemper, Mehaffie, Anderson and Benham.

"33. On both July 16 and 18, 1997, Defendants blocked or impeded access to the front and back entrances of the Dayton clinic by standing and sitting in the alley leading to the clinic's back entrance, and standing or sitting along and on the entire front edge of the clinic's property, including the sidewalk leading to the clinic's other entrance.

"34. On July 16, 1997, Defendants blocked and impeded access to the Dayton clinic in this manner for almost the entire day. On July 18, 1997, Defendants blocked access to the clinic for almost the entire afternoon.

"35. Through their conduct, Defendants physically obstructed the Dayton clinic by rendering access to the clinic unreasonably difficult or hazardous.

"36. Through their conduct, Defendants intentionally interfered with or attempted to interfere with Dayton clinic employees and clients because these individuals were seeking to provide or obtain, or in order to prevent them from providing or obtaining, reproductive health services." (Doc. # 1, Complaint).

2. The Complaint specifically identifies Defendants Benham, Thomas, and Anderson as participants in the protest activities. Although Defendants Alaw and Mechanic are not identified by name, they are "Defendants" in this action, and the Complaint alleges that the "Defendants" engaged in the aforementioned conduct. While the Plaintiff bears the burden of proving at trial that *each* Defendant individually engaged in the acts in question, the Complaint is sufficient to survive a Motion to Dismiss.

The remaining issue is whether the Court's exercise of *in personam* jurisdiction over the Defendants would comport with constitutional Due Process requirements. When considering the question of personal jurisdiction, "the crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir.1996), quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This inquiry involves the Court's consideration of three factors:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 1263. This test has been applied to determine "the present outer limits of *in personam* jurisdiction based upon a single act." *Id.,* quoting *Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir.1968). The Sixth Circuit has recognized that a "numerical count" of a defendant's contacts with the forum state "has no talismanic significance." *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1301 (6th Cir.1989). The critical issue is the "quality" of the contacts, not the "quantity."[3] *Id.* When applying the foregoing standards, the Court must consider the pleadings in a light most favorable to the Plaintiff, which need only make a prima facie showing of personal jurisdiction to defeat the Defendants' Motions to Dismiss. *Id.* at 1262. Dismissal of the Plaintiff's Complaint in the present procedural posture is appropriate only if "all of the specific facts which the [[P]laintiff] ... alleges collectively fail to state a prima facie case for jurisdiction." *Id.*

In the present case, the Plaintiff's Complaint (Doc. # 1) establishes a prima facie showing of *in personam* jurisdiction. "The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State, and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.'" *Id.* at 1263, quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 474–475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The "purposeful availment' requirement is intended to guarantee that random, fortuitous, or attenuated contacts do not bring a defendant within a court's jurisdiction. *Id.*

Without question, the Defendants purposely availed themselves of the privilege of acting in Ohio or causing consequences there. The Plaintiff's Complaint alleges that the Defendants, through their own voluntary actions, physically obstructed access to women's clinics, and intentionally interfered, or attempted to interfere, with clinic employees and clients in order to prevent the clinics from providing reproductive health services. The Complaint alleges that the Defendants' actions included trespassing on the clinics' property in Ohio, thereby rendering clinic access unreasonably difficult or hazardous. Thus, the Defendants' contacts with Ohio proximately resulted from their own voluntary actions. In addition, the Defendants' intentional actions, which were performed in the state, reasonably can be said to have a "substantial connection" with Ohio. Finally, the Defendants' actions of blocking clinic

---

**3.** In the present case, Defendants Thomas and Anderson allege that they have appeared in Ohio only once. Defendant Benham alleges that he has appeared in Ohio three times. (Doc. # 66 at 3–4).

access and trespassing on clinic property were such that they reasonably should anticipate the possibility of being haled into an Ohio court to answer for their conduct. As a result, the Plaintiff has made a prima facie showing that the Defendants purposely availed themselves of the privilege of acting or causing consequences in Ohio. The Defendants' contacts with the forum state were planned and intentional, not merely random, fortuitous, or attenuated, and they satisfy the "purposeful availment" component of the Court's constitutional inquiry.[4]

The Court also finds that the Plaintiff's cause of action unquestionably arose from the Defendants' July, 1997, abortion protesting activities in Ohio, thereby satisfying the second constitutional requirement. *Cf. CompuServe*, 89 F.3d at 1267 ("If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."). Finally, the Court finds that the exercise of personal jurisdiction over the Defendants would be fair and reasonable, i.e., it would comport with "traditional notions of fair play and substantial justice." *Id.* at 1268. Once a court finds "the first two elements of a prima facie case—purposeful availment and a cause of action arising from the defendant's contacts with the forum state—then an inference arises that this third factor is also present." *Id.* Nothing in the record before the Court rebuts the inference that exercising personal jurisdiction over the Defendants would be fair and reasonable. To the contrary, Court notes that the Defendants traveled to Ohio to engage in the conduct at issue, and it finds no substantial burden imposed by requir-

ing them to return and answer for their actions, particularly given that the possibility of being haled into an Ohio court was a foreseeable consequence. The Court also recognizes Ohio's strong interest in a local forum for the adjudication of this litigation involving allegedly tortious activity directed toward Ohio residents and businesses. Finally, considerations of efficiency and convenience militate in favor of finding the exercise of personal jurisdiction to be fair and reasonable. Because the Defendants have purposely directed their activities at Ohio residents, they must present a compelling case that some other considerations render jurisdiction unreasonable. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir.1988). In light of the foregoing considerations, the Court finds no compelling evidence that its exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. Rather, the Plaintiff has made a prima facie showing that the Due Process requirements of the Fourteenth Amendment are met in the present case.

Having determined that the Defendants are amenable to suit under Ohio's long-arm statute, and that the constitutional Due Process requirements are satisfied, the Court hereby overrules the Defendants' Motions to Dismiss (Doc. # # 66, 82, 83).

## II. *Plaintiff's Motion to Compel Discovery (Doc. # 85)*

The next Motion pending before the Court is the Plaintiff's Motion to Compel Discovery (Doc. # 85). The Plaintiff seeks to compel Defendant Operation Rescue to

---

4. In opposition to this conclusion, the Defendants suggest that they did not intend to violate the law or to engage in activity that would subject them to arrest. (Doc. # 90 at 4, *et seq.*). These allegations are immaterial to the Court's ruling on the present Motions to Dismiss. The relevant inquiry is not whether the Defendants intended to violate the law or subject themselves to arrest. Rather, the critical issues are whether the Defen-

dants purposely availed themselves of the privilege of acting in Ohio, whether the Plaintiff's cause of action arose from the Defendants' activities in Ohio, and whether the Defendants' acts, or the consequences that they caused, have a substantial enough connection to Ohio to make the Court's exercise of personal jurisdiction reasonable. *CompuServe*, 89 F.3d at 1263.

answer its first set of interrogatories. In support, the Plaintiff asserts: (1) that Operation Rescue is unrepresented by counsel; (2) that Operation Rescue's national director does not know whether he is the organization's representative, whether the organization plans to respond to the interrogatories, or whom the Plaintiff's might contact regarding the interrogatories. The Plaintiff also asserts, upon information and belief, that Operation Rescue maintains an office, a telephone number, a fax number, a post-office box, and an Internet Web site. *Id.*

The Court notes that Operation Rescue has been served with a copy of the Plaintiff's Complaint and has filed an Answer (Doc. # 14), but it has not responded to the Plaintiff's Motion to Compel Discovery (Doc. # 85). In light of the Plaintiff's exhaustion of all extrajudicial means of resolving this issue, and Operation Rescue's failure to respond to the Plaintiff's Motion or to comply with the discovery request, the Court finds the Plaintiff's Motion to Compel Discovery well taken and sustains the same. Defendant Operation Rescue is directed to respond to the Plaintiff's first set of interrogatories within ten days. Operation Rescue's failure to respond as ordered will result in the issuance of a default judgment against it.

### III. *Other Discovery Motions (Doc. # # 69, 84, 95)*

Also pending before the Court are three discovery-related Motions directed toward subpoenas *duces tecum* that the Defendants have served upon non-party women's clinics in Cincinnati, Kettering, and Dayton, Ohio. The subpoenas request the production of various documents and seek the appearance of a designated witness, or witnesses, from each clinic for deposition purposes. The three clinics were the sites of

the Defendants' July, 1997, abortion protests that underlie this litigation.

The first Motion is a Motion for a Protective Order (Doc. # 69) filed by the Plaintiff. In its Motion, the Plaintiff seeks to limit the production of the information requested in the Defendants' subpoenas. The second Motion is a Motion to Quash or Modify the Defendants' subpoenas (Doc. # 84) filed by the non-party Women's Medical Center of Cincinnati, Women's Medical Center of Kettering, and Dayton Women's Services (hereinafter "clinics"). The third Motion is a Motion to Compel Discovery (Doc. # 95) filed by Defendants Philip Benham, James Anderson, Rusty Thomas, David Mehaffie, and Olivia Alaw.[5] In their Motion, these Defendants seek an Order directing the clinics to produce all of the documents requested in their subpoenas and to designate representatives to appear for deposition testimony.

Without discussing each individual request contained in the Defendants' subpoenas, the Plaintiff's Motion for a Protective Order (Doc. # 69) broadly objects to discovery with respect to two categories of information: (1) the specific types of services provided by the clinics, including any "partial-birth abortion" procedures; and (2) the extent of any actual damages suffered by the clinics. Conversely, in their Motion to Quash or Modify (Doc. # 84), the clinics object to fourteen specific discovery requests contained in the Defendants' subpoenas. As the Court explained during its February 26, 1999, telephone conference call with counsel, it will follow the approach taken by the Plaintiff and identify *types* or *categories* of information subject to discovery, rather than addressing each disputed discovery request separately. The Court trusts that the parties

---

**5.** This Motion was filed on February 22, 1999. It is styled as a "Joint Motion to Compel and Memorandum in Opposition to the Clinics' Motion to Quash or Modify Defendants' Subpoena." Although the clinics have not filed a written response to this Motion, its contents were discussed in the Court's February 26, 1999, telephone conference call with counsel. The Motion provides a response to the clinics' Motion to Quash or Modify and seeks enforcement of the Defendants' subpoenas.

and the clinics then will be able to proceed without judicial intervention.

 Before turning to the central discovery issues before it, the Court notes that the Plaintiff has standing to seek a protective order on behalf of the non-party clinics. Although the Defendants have objected to the Plaintiff's standing, the Court finds the objection unpersuasive. Rule 26(c) of the Federal Rules of Civil Procedure allows either "a party or the person from whom discovery is sought" to seek a protective order. As the Plaintiff properly notes, several other federal courts have found that a party has standing to seek a protective order on behalf of non-parties. *See, e.g., United States v. McMillan*, No. 3:95-CV–633WS (S.D.Miss. Sept. 28, 1995) (finding the government entitled to seek a protective order on behalf of a non-party in a Freedom of Access to Clinic Entrances Act case, because the non-party's interests and the government's interests are "closely aligned"); *Equal Employment Opportunity Comm. v. Kim and Ted, Inc.*, 1995 WL 591451, No. 95 C 1151 (N.D.Ill. Oct. 3, 1995) (concluding that the EEOC possesses standing to move for a protective order on behalf of a non-party, because such motions "may be brought by a party or by the person from whom discovery is sought . . .").

Turning now to the discovery issues before it, the Court notes that the clinics have objected to only fourteen of the twenty-five document production requests made in the Defendants' subpoenas. In its February 26, 1999, telephone conference call with counsel, the Court directed the clinics to respond to the eleven discovery requests contained in the Defendants' subpoenas to which no objections had been made. As explained in the conference call, the Court finds the Defendants entitled to discovery of these unchallenged matters. Furthermore, because the Court concludes in its analysis, *infra*, that the Defendants are entitled to obtain some discovery from the clinics, it sustains the Defendants' re-

quest for each clinic to appoint a designated representative for deposition purposes.

The two primary areas of contention that remain involve the extent to which the Defendants may discover, via their subpoenas and deposition testimony: (1) the specific abortion procedures performed by the clinics, including the so-called "partial-birth" abortion procedure; and (2) any "injuries" or "actual damages" suffered by the clinics. With respect to the first issue, the Defendants note that the Plaintiff must establish, as part of its case-in-chief, that on the dates in question the clinics provided, had provided, or were scheduled to provide "reproductive health services." Consequently, they argue that discovery about the specific types of procedures performed by the particular clinic is relevant and discoverable. The Defendants also reason that the Plaintiff's prayer for civil penalties entitles them to discovery concerning the clinics' performance of "partial birth" abortions. Because civil penalties are intended to "vindicate the public interest," the Defendants argue that the clinics' performance of such procedures is a relevant "public interest" consideration, which may militate against the imposition of a civil penalty.

 After considering the arguments of counsel, the Court concludes that the Defendants are entitled to discovery concerning the general types of reproductive health services that the clinics provided, had provided, or were scheduled to provide on the relevant days. For example, the Defendants may discover whether the clinics performed counseling, health check-ups, pregnancy terminations, etc. Because the Defendants have not admitted that the clinics provided, had provided, or were scheduled to provide "reproductive health services" on the specific days in question, they are entitled to discovery on the issue.

 The Court concludes, however, that the Defendants have no need to discover the specific types of pregnancy-termination *procedures* that the clinics per-

formed, had performed, or were scheduled to perform. The Access Act provision at issue prohibits the Defendants from engaging in certain conduct with respect to clinics that provide "reproductive health services." *See* 18 U.S.C. § 248(a)(1). The specific pregnancy termination procedures employed by the clinics in the present case simply are not relevant to the Plaintiff's case against the Defendants under 18 U.S.C. § 248(a)(1), or reasonably calculated to lead to the discovery of relevant, admissible evidence.

As noted above, the Defendants suggest that the clinics' performance of "partial birth" abortions is a relevant "public interest" consideration that may weigh against the imposition of civil penalties. The Court finds this argument unpersuasive. The "public interest" that the Access Act seeks to vindicate is the public interest in deterring future violations of the Act, and ensuring the safety of clinic workers and patients. Given the current legality of the "partial birth" abortion procedure in Ohio, the clinics' performance of such a procedure could not violate the "public interest," as a matter of law. To the contrary, the public interest necessarily is served by enforcing the Access Act and guaranteeing that women are able to obtain all legal reproductive health services, including "partial birth" abortions.

In opposition to this conclusion, the Defendants suggest that the clinics may be performing "infanticide," i.e., the killing of living babies fully outside of the mother's womb. They further argue that "infanticide" would not be in the "public interest," and that civil penalties, therefore, would be inappropriate. Although the Defendants are suspicious about such practices occurring, they admit lacking any evidence confirming their suspicions. In order to accommodate the Defendants' inquiry into this matter, the Court will permit them to engage in discovery as follows: The Defendants may discover the types of reproductive health services performed by the clinics generally. If they learn that those services include pregnancy termination, then they may inquire about whether the clinics have performed any pregnancy termination procedures *beyond* Ohio's legal "dilation and extraction" abortion procedure. In making this inquiry, the Defendants are instructed to utilize the definition recognized by the Court in *Women's Medical Professional Corp. v. Voinovich*, 911 F.Supp. 1051(S.D.Ohio 1995), *aff'd*, 130 F.3d 187 (6th Cir.1997). In that ruling, the Court recognized the following definition of the "dilation and extraction" procedure:

> [T]he termination of a human pregnancy by purposely inserting a suction device into the skull of a fetus to remove the brain. 'Dilation and Extraction procedure' does not include either the suction curettage procedure of abortion or the suction aspiration procedure of abortion.

*Id.* at 1053. This procedure, which is sometimes referred to as a "partial birth" abortion, "involves removing all but the head of the fetus from the uterus and then compressing the skull by means of suction." *Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 199 (6th Cir.1997). Because the Sixth Circuit found Ohio's ban on this procedure unconstitutional, the Court concludes that the Defendants' "public interest" argument fails, as a matter of law, unless they provide the Court with evidence establishing that the clinics exceeded this procedure. Consequently, the Court finds the Defendants entitled to question each clinic's designated representative (who may be a doctor) about whether any procedures *beyond* the "dilation and extraction" procedure have ever taken place at the clinics. If the Defendants find evidence suggesting that such procedures have taken place at one or more of the clinics, then they are instructed to request a telephone conference call with the Court. If the Defendants obtain no evidence suggesting that procedures beyond the "dilation and extraction" process have taken place at any of the clinics,

then they will be entitled to no more discovery on the issue.

■ With respect to the Defendants' requests to discover information concerning any "injuries" or "actual damages" suffered by the clinics, the Court finds such information irrelevant and not discoverable. The Plaintiff is seeking statutory damages in the present case rather than actual damages. Consequently, an inquiry into actual damages suffered by the clinics simply is not relevant. The Court also rejects the Defendants' argument that such an inquiry is relevant because the Plaintiff has alleged the existence of a tortious injury by act or omission in this state. As the Court noted, *supra*, the Plaintiff has alleged long-arm jurisdiction over the out-of-state Defendants based upon the existence of a "tortious injury" arising from their protest activities. The Court also has recognized, however, that "every unauthorized entry upon the land of another constitutes a trespass and regardless of whether the owner suffered substantial injury or not, he at least sustains a legal injury which entitles the owner to a verdict for some damages.... The law conclusively presumes damages in every case of trespass." *Pembaur v. City of Cincinnati*, 745 F.Supp. 446, 456 (S.D.Ohio 1990) (Rubin, J.), citing *Pearl v. Pic Walsh Freight Co.*, 112 Ohio App. 11, 168 N.E.2d 571, 573 (1960), *aff'd*, 947 F.2d 945, 1991 WL 216875 (6th Cir.1991) (unpublished table decision). Because the Plaintiff's Complaint alleges facts from which a jury could find that the Defendants committed the tort of trespass, and because an "injury" necessarily exists in all cases of trespass, the Defendants have no need to conduct discovery into any "injury" or "damages" suffered by the clinics. As the District Court noted in *Pembaur*, the law conclusively presumes the existence of such damages, and no "actual damages" are being sought by the Plaintiff.

■ The Court also concludes that the Defendants are not entitled to discover the identity of the clinics' patients or obtain copies of their records. Although such information is not privileged under federal law,[6] the Court has weighed the Defendants' need for the information against the potential prejudice, harassment, and distress that the clinics' patients may experience if the information is disclosed. Unless the Defendants present the Court with some evidence, as opposed to mere speculation, that the clinics have performed procedures beyond "dilation and extraction," the Court concludes that they are not entitled to discover patients' identities or clinic records. *Cf. Northeast Women's Center, Inc. v. McMonagle*, No. Civ. A. No. 85–4845, 1986 WL 462 (E.D.Pa. Nov.7, 1986) (rejecting the defendants' request to discover the identity of women who sought abortions at a women's clinic, because "disclosure of plaintiff's patients' names and addresses would violate the very foundation of their right of privacy and have a chilling effect on any future exercise of the right"). If the Defendants do acquire evidence that the clinics have performed procedures beyond "dilation and extraction," from sources other than interviewing patients and/or reviewing their records, then the Court will revisit this issue with counsel through a telephone conference call. Finally, the Court notes that its ruling precluding the Defendants from discovering the identity of the clinics' patients is not applicable to any patients whom the Plaintiff intends to call as witnesses at trial. The Defendants are permitted to discover the identity of, and depose, any clinic patients who will be witnesses for the Plaintiff.

■ The Court next concludes that the Defendants are entitled to discover the identity of the clinics' employees with whom they allegedly "interfered." The Defendants also are entitled to discover the identity of the clinics' employees who observed any "interference." The Plaintiff's Complaint alleges that the Defen-

---

6. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir.1992).

dants "interfered with" or "attempted to interfere with" the clinics' employees and patients. The Access Act defines "interfere with" as meaning "to restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2). Given that the Plaintiff must prove such "interference" at trial, the Defendants are entitled to discovery on the issue. As noted above, however, the Defendants are not permitted to discover the identity of the clinics' patients, unless the Plaintiff intends to call the patients as witnesses at trial.

■ Finally, the Defendants are not entitled to discover all documents that the clinics have sent to, or received from, other women's health clinics. Although the Court is not persuaded by the clinics' First Amendment argument, it notes that the subpoena makes an unreasonably broad request for *all* correspondence. Furthermore, through this request, the Defendants appear to seek information concerning the various services provided by the clinics. In its analysis, *supra*, the Court has set forth the extent to which the Defendants may inquire into the reproductive-health services provided by the clinics. Accordingly, the Defendants' request for all correspondence with "pro-choice organizations" is denied.

## IV. *Conclusion*

Based upon the foregoing analysis, the Court OVERRULES the Motion to Dismiss (Doc. # 66) filed by Defendants Philip Benham, Rusty Thomas, and James Anderson. The Motion to Dismiss (Doc. # 82) filed by Defendant Olivia Alaw is OVERRULED. The Motion to Dismiss (Doc. # 83) filed by Defendant Heather Mechanic is OVERRULED. The Motion to Compel Discovery (Doc. # 85) filed by Plaintiff United States of America is SUSTAINED. The Motion for a Protective Order (Doc. # 69) filed by Plaintiff United States of America is SUSTAINED in part and OVERRULED in part. The Motion to Quash or Modify Subpoenas (Doc. # 84) filed .by the non-party Women's Medical Center of Cincinnati, Women's Medical Center of Kettering, and Dayton Women's Services is SUSTAINED in part and OVERRULED in part. The Motion to Compel Discovery (Doc. # 95) filed by Defendants Benham, Thomas, Anderson, Mehaffie, and Alaw is SUSTAINED in part and OVERRULED in part.

Mindful of the upcoming April 5, 1999, trial date and the expressed need of the parties for further discovery, the Court will convene a conference call, beginning at 10:00 a.m., Tuesday, March 16, 1999, for the purpose of reviewing the remaining discovery needs of the parties, in light of this opinion, and the viability of the aforesaid trial date.