**Dennis T. SERRAS, Michael C. Gibbons, and Dieter J. Boehm, Plaintiffs–Appellants,**

**v.**

**FIRST TENNESSEE BANK NATIONAL ASSOCIATION, Defendant–Appellee.**

No. 88–1282.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 13, 1988.

Decided May 25, 1989.

Robert W. Southard, Bruce T. Wallace (argued), Hooper, Hathaway, Price, Beuche & Wallace, Ann Arbor, Mich., for plaintiffs-appellants.

Stephen G. Anderson (argued), Knoxville, Tenn., James M. Cameron, Dykema, Gossett, Spencer, Goodnow & Trigg, Ann Arbor, Mich., for defendant-appellee.

Before MERRITT, MARTIN and JONES, Circuit Judges.

MERRITT, Circuit Judge.

This is a civil action for damages under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* and under the common law of fraud. The question on appeal is whether the District Court in the Eastern District of Michigan has personal jurisdiction, under Michigan's long-arm statute, M.C.L. § 600.715, over defendant First Tennessee Bank. By an Order dated February 19, 1988, the Court below held that it did not. Plaintiffs Dennis T. Serras, Michael C. Gibbons, and Dieter J. Boehm appeal. We reverse.

## I.

In the transaction that gives rise to this suit, SABP Partnership (in which all three plaintiffs were partners) purchased a restaurant in Memphis, Tennessee, from William F. Mullins. Mullins had obtained the restaurant with the help of a loan from the United American Bank. When that bank failed and went under the receivership of the FDIC, the First Tennessee Bank purchased some of its assets. Among these assets was the Mullins' loan.

According to the plaintiffs, the Bank knew that its loan to Mullins was turning sour and entered into efforts, along with Mullins, to sell the restaurant to a new owner. They assert that the Bank, taking on the role of a seller in order to protect its interest in the restaurant, deceived the plaintiffs into thinking that the appraised value and the collateral value of the restaurant were much higher than it knew them to be. They assert that, relying on the Bank's fraudulent representations as to the property's value, they agreed to purchase it, to take out a loan from the Bank and to give their personal guarantees that the loan would be paid. No one disputes that SABP Partnership executed a promissory note to the Bank for $900,000 and that each plaintiff guaranteed the note for $100,000.

SABP Partnership has defaulted on the note, and the Bank has sued all three plaintiffs in Tennessee's Chancery Court on their guarantees. It appears that this federal litigation was filed first, but that the Bank obtained service on Serras, Gibbons and Boehm in the state-court action before the Bank was served with the complaint in the federal action. Each side's claims against the other may turn out to be a compulsory counterclaim in the suit in which that side appears as defendant, as the two actions arise from the same facts.

## II.

### A.

The Bank brought its motion to dismiss under Fed.R.Civ.P. 12(b)(2), which specifies that the defense of lack of personal jurisdiction may be made by that vehicle. Rule

12(d) provides that a motion to dismiss brought under Fed.R.Civ.P. 12(b)(2) may be heard and determined before trial, but that the court has the power to defer hearing of evidence and a ruling on the motion until trial. Fed.R.Civ.P. 12(d). "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 728, 83 L.Ed. 1111 (1939).

The case law establishes a settled procedural scheme to guide trial courts in the exercise of this discretion. If it decides that the motion can be ruled on before trial, the court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir.1981). However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974). The weight of the plaintiff's burden, however, depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue (either pretrial or during trial). If the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise [,] ... specific facts showing that the court has jurisdiction." *Id.* at 930. When the trial court has determined that the motion to dismiss for lack of personal jurisdiction can be decided upon these written submissions, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed. 2d 816 (1981) (quoting *Poston v. American President Airlines, Ltd.*, 452 F.Supp. 568, 571 (S.D.Fla.1978)). Thus, her burden is merely that of making a *prima facie* showing that personal jurisdiction exists. *Id.* at 438. If she meets that burden the motion

to dismiss should be denied, "notwithstanding any controverting presentation by the moving party." *Marine Midland Bank*, 664 F.2d at 904.

Any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). But neither is the defendant left unprotected from the plaintiff's bald written allegation of jurisdictional facts. First, a defendant who alleges facts that would defeat the court's personal jurisdiction can invoke the court's discretion to order a pretrial evidentiary hearing on those facts. If the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing, *Welsh*, 631 F.2d at 439, and to order discovery of a scope broad enough to prepare the parties for that hearing. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977). At this stage, the burden on the party asserting jurisdiction quite properly increases. She must now establish that jurisdiction exists by the same standard that would obtain if the matter were deferred to trial: the preponderance of the evidence. *Welsh*, 631 F.2d at 439; *see also Marine Midland Bank*, 664 F.2d at 904. And second, even if the court issues a pretrial order denying defendant's 12(b)(2) motion, the defendant may proceed to trial without waiving the defense. *Hunt v. BP Exploration Co. (Libya) Ltd.*, 492 F.Supp. 885, 895 (N.D.Tex. 1980). A threshold determination that personal jurisdiction exists "does not relieve [the plaintiff] ... at the trial of the case-in-chief from proving the facts upon which jurisdiction is based by a preponderance of the evidence." *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 n. 4 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440, *reh'g denied*, 384 U.S. 982, 86 S.Ct. 1858, 16 L.Ed.2d 693 (1966). Moreover, a pretrial ruling denying a 12(b)(2) motion to dismiss "does not purport to settle any disputed factual issues germane to

the underlying substantive claim. What is settled is the court's power to exercise personal jurisdiction over a defendant, nothing more." *Val Leasing, Inc. v. Hutson,* 674 F.Supp. 53, 55 (D.Mass.1987). As the Supreme Court has said in *McNutt,* the party asserting jurisdiction "must carry throughout the litigation the burden of showing that he is properly in court." *McNutt,* 298 U.S. at 189, 56 S.Ct. at 785.

The court's solicitude for defendants who object to its personal jurisdiction is always tempered, however, by its concern that the door to a federal courtroom not be slammed in the face of a plaintiff seeking to invoke its powers where there is, in fact, no defect in personal jurisdiction. Particularly where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount "proof which would, in effect, establish the validity of their claims and their right to the relief sought." *Milligan v. Anderson,* 522 F.2d 1202, 1207 (10th Cir.1975); *Montreal Trust Co.,* 358 F.2d at 242. Judicial resources may be more efficiently deployed if the court holds but one hearing on the contested facts. *Bialek v. Racal–Milgo, Inc.,* 545 F.Supp. 25, 33–34 (S.D.N.Y.1982). And more fundamentally, as the Second Circuit has noted, postponing proof till trial allows a plaintiff to present all her proof "in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." *Data Disc,* 557 F.2d at 1285–86 n. 2. In many cases, then, a district court may find sound reasons to rule, on the basis of written submissions, that the plaintiff has made her *prima facie* showing that the court has personal jurisdiction over a defendant, and to reserve all factual determinations on the issue for trial.

In the present case, we hold that the District Court erroneously granted the Bank's motion for summary judgment on written submissions, in light of the plaintiffs' fully adequate allegation of jurisdictional facts in the affidavit sworn by plaintiff Serras. We do not reach a question properly within the District Court's discretion: whether a pretrial evidentiary hearing will be necessary to resolve the Bank's Rule 12(b)(2) motion, or whether the factual dispute it involves would be more efficiently and more fairly resolved at trial.

**B.**

In this case, many of the facts relevant to personal jurisdiction are undisputed. SABP Partnership and all three plaintiffs were based in Michigan; the Bank and the restaurant are in Tennessee. As the District Court noted, the property that was purchased in this transaction and that secures the note is in Tennessee; the note is payable in Tennessee. The parties further agree that the Bank placed phone calls and sent letters to plaintiffs in Michigan and that their agent visited them there; that the Bank solicited information about plaintiffs from their Michigan lenders; and that the documents consummating the sale were executed in Michigan.

Certain facts, however, are disputed. As to these facts, the District Court was required to elect one of two courses: determine on written submissions whether the plaintiffs had made a *prima facie* showing on facts sufficient to establish personal jurisdiction, or exercise its discretion to hold an evidentiary hearing (pretrial or at trial). Because it chose the former option, it was obligated to look solely to the plaintiff's pleadings and affidavits: if those stated the facts with sufficient particularity, it was obligated to ignore contrary assertions by the Bank. Applying this rule to plaintiff Serras' affidavit, which the plaintiffs submitted to the court in their effort to resist the Bank's motion to dismiss for want of personal jurisdiction, we note the following allegations:

1. The Bank made representations about the appraised and the collateral value of the restaurant to the plaintiffs which induced them to invest in the restaurant. These representations were false, and amounted to a solicitation to plaintiffs to buy the restaurant.

2. The Bank made some of their fraudulent representations to the plaintiffs in the telephone calls between the Bank in Tennessee and the plaintiffs in Michigan.

3. When the Bank's agent visited the plaintiffs in Michigan, he made fraudulent representations to them there.

In addition, Serras states in his affidavit that the documents consummating the sale were mailed to plaintiffs in Michigan and executed by them there. He does not indicate that the Bank placed those documents in the mail, so that this averment adds little, if anything, to plaintiffs' argument in support of the court's personal jurisdiction.

The District Court was in clear error when it concluded that "Defendant's representatives came to Michigan only once, to visit Plaintiffs' other restaurants in an attempt to determine Plaintiffs' financial strength." Order, at 3. At this point the District Court looked to the affidavit of Michael F. Stalls, the agent of the Bank who made the trip in question, and ignored the contrary assertions in the affidavit of plaintiff Serras—all in violation of the clear precedents cited above.

The proper conclusion on this record is that—for the purpose of deciding the Rule 12(b)(2) motion to dismiss only—the Bank both placed phone calls to plaintiffs in Michigan during which they made fraudulent representations about the restaurant, and continued its course of fraudulent conduct during its agent's trip to Michigan. A ruling on the motion on written submissions thus presents a narrow—and easy—question under the Michigan long-arm statute and under the due process clause: is an extraterritorial corporate defendant properly haled before a Michigan court to answer the claim that it committed federal frauds on the plaintiffs within Michigan boundaries?

### III.

The District Court sitting in Michigan possesses long-arm jurisdiction only by virtue of Michigan's long-arm statute. Fed.R.Civ.P. 4(e). The reach of this *in personam* jurisdiction is limited, moreover, by the due process clause of the federal constitution. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The duty of the court is to assure itself that the requirements of both authorities—the state long-arm statute and the due process clause—are met before it can assert its jurisdiction over the person of the defendant.

Very often these two analyses collapse into one, because the state has determined that its long-arm statute, where it applies, shall extend to the outermost boundaries permitted by the due process clause. As we have indicated in a previous case, however, a state retains the power to restrict long-arm jurisdiction, so that it falls short of the maximum permitted by the federal constitution—and in at least one area Michigan has chosen to exercise that power. *Rann v. McInnis,* 789 F.2d 374, 376–77 (6th Cir.1986). The *Rann* case, observing that Michigan did not permit courts to assert long-arm jurisdiction over an extraterritorial individual defendant who had provided services to Michigan residents out of the state and who had never solicited the business of Michigan residents, noted that in this area the arm of a Michigan court cannot reach as far as due process would allow. *Id.* at 376 (relying on *Woodward v. Keenan,* 79 Mich.App. 543, 261 N.W.2d 80 (1977)). In the present case we need not determine whether Michigan restricts long-arm jurisdiction to a scope narrower than that permitted by the Constitution, however, because the requirements of both authorities are fully satisfied.

Plaintiffs assert that the court has personal jurisdiction over the Bank by virtue of M.C.L. § 600.715(1), (2). That portion of Michigan's long-arm statute reads:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

M.C.L. § 600.715. Because the District Court failed to acknowledge that plaintiffs had made an adequate *prima facie* showing, by affidavit, that the Bank had engaged in activity in Michigan that resulted in the present action for federal torts, it did not consider the importance of paragraph (2) of this provision. The facts alleged by the plaintiffs directly satisfy both paragraphs (1) and (2). The Michigan Supreme Court has declared that the "transaction of any business within the state" is intended to be comprehensive: "The word 'any' means just what it says. It includes 'each' and 'every'.... It comprehends 'the slightest'." *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623, 624 n. 2 (1971). Extended negotiations between an out-of-state defendant and a resident plaintiff have been held to justify the imposition of Michigan long-arm jurisdiction. *American Business Overseas v. Methods Research Products, Inc.*, 593 F.Supp. 1 (W.D.Mich.1983). Thus, the mere fact that a defendant has met with plaintiff in Michigan does not confer personal jurisdiction under M.C.L. § 600.715(1): the parties must have engaged in negotiations at that meeting. *Dean Marketing, Inc. v. AOC Int'l (U.S.A.) Ltd.*, 610 F.Supp. 149, 153–54 (E.D.Mich.1985) (no personal jurisdiction because no proof that negotiations occurred during meeting in Michigan). Here, the requirements of the relevant cases are explicitly met: the telephone calls and the trip to Michigan were, according to Serras' affidavit, intrinsic parts of the negotiation process. It is equally plain that, if the Bank's agent did indeed travel to Michigan to meet with the plaintiffs, and during those meetings made statements that constitute the very fraudulent representations alleged here, it has done an act in the state resulting in an action for tort, and has thus specifically brought itself within the reach of M.C.L. § 600.715(2).

We are equally confident that the *prima facie* showing advanced by the plaintiffs satisfies the requirements of due process. In order to determine whether the requirements of due process are met, this Court has adopted a three-part test:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968). We conclude that all three requirements of the *Mohasco* test are met.

First, if we study the question solely on the affidavits and pleadings, we must conclude that plaintiff has adequately alleged that the Bank did purposefully avail itself not only of the privilege of causing a consequence within Michigan, but also of the privilege of acting within the state. We are not confronted here with a case in which the only alleged contact besides the plaintiffs' Michigan residency, is the defendant's making a telephone call from an out-of-state location to the plaintiffs in Michigan, seeking to solicit the plaintiff to engage in an out-of-state transaction. These facts are not sufficient to support long-arm jurisdiction. *Speckine v. Stanwick Int'l, Inc.*, 503 F.Supp. 1055, 1059 (W.D.Mich.1980). In the present case, the plaintiffs rely not only on alleged telephone calls but also on an allegation that the defendant actually travelled to Michigan to solicit their business, and actually made fraudulent representations while in Michigan. Thus, the same allegations that satisfy M.C.L. § 600.715(1) and (2) directly meet this constitutional requirement. Any claim that the Bank did not freely and intentionally engage in these activities would be absurd. *See Speckine*, 503 F.Supp. at 1058.

The second *Mohasco* requirement—that the cause of action arise from the defendant's forum-state activities—is also clearly met by the facts as established by plaintiffs' allegations and sworn statement.

The alleged fraudulent misrepresentations practiced upon plaintiffs within Michigan, both in the phone calls and during the visit of the Bank's agent, are *an element* of the cause of action itself. We therefore must reject the Bank's feeble argument that, if it had a duty to disclose anything, that duty could have been performed anywhere so that any failure to perform shouldn't be held to establish a Michigan contact. Plaintiffs have averred positive acts of misrepresentation in Michigan.

Finally, *Mohasco* requires us to determine whether the contacts thus far proven are substantial enough to make it reasonable to subject the Bank to the personal jurisdiction of a Michigan court. We believe that, if the question of personal jurisdiction is to be resolved upon the parties' written submissions as they appear in the record before us, it would be eminently reasonable to require the Bank to defend itself in a federal court in Michigan. If plaintiffs' averments are true, the Bank has engaged in sustained negotiations with parties it knew to be residents of Michigan, established a relationship with them that was sure to continue over a long period of time, secured a contract by which it would derive benefits directly from the pocketbooks of Michigan residents, and exposed the plaintiffs to harms that would affect them not only as owners of Tennessee property but also as residents of Michigan. These facts, if true, are easily sufficient to meet the reasonableness requirements set forth by the United States Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985).

### IV.

For all the foregoing reasons, we conclude that the requirements of due process and of M.C.L. § 600.715(1), (2) are fully satisfied by the facts as plaintiffs have proven them up to this point in this litigation. We therefore reverse the judgment of the District Court, and remand for further proceedings. We do not reach the question of whether the dispute over jurisdictional facts should be resolved in a pre-

trial hearing or deferred to trial. Further, we do not make any determination on questions of venue and *forum non conveniens*, as the Bank has asked us to do, because these issues have never been the subject of a decision below. And finally, we note that our ruling today does not in any way prejudice any other pleas in bar of this litigation, specifically any assertion by the Bank that plaintiffs must litigate their fraud charges by means of a compulsory counterclaim in the Bank's suit in Tennessee state court.

Reversed and remanded.