## ROTHSCHILD BERRY FARM, Plaintiff,

v.

## SERENDIPITY GROUP LLC, dba J.D. Rothschild & Company, Defendant.

### No. C–3–99–281.

United States District Court, S.D. Ohio, Western Division.

Aug. 6, 1999.

Thomas William Flynn, Biebel & French, Dayton, OH, for Rothschild Berry Farm, Inc., plaintiff.

Joseph Richard Dreitler, Vorys Sater Seymour & Pease, Columbus, OH, for JD Rothschild & Co., defendant.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (DOC. # 10); CAPTIONED CAUSE ORDERED TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION; TERMINATION ENTRY

RICE, Chief Judge.

The Plaintiff brings this action under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, Chapter 4165 of the Ohio Revised Code and the common law of Ohio, alleging that the Defendant is infringing upon its trademark. This case is now before the Court on the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 10), filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1] Although

---

1. Less than two weeks after initiating this litigation, the Plaintiff filed a Motion for Preliminary Injunction (Doc. # 4). During a

telephone conference call between the Court and counsel, conducted on July 8, 1999, the

the Plaintiff argues that it is permissible to exercise personal jurisdiction over the Defendant, Plaintiff requests that, if the Court should conclude that it may not exercise such jurisdiction, it transfer this litigation, pursuant to 28 U.S.C. § 1406, to the United States District Court for the Northern District of Georgia, at Atlanta, rather than dismissing same. As a means of analysis, the Court will initially decide whether it can exercise personal jurisdiction over the Defendant. If the Court concludes that it cannot exercise such jurisdiction, it will address the Plaintiff's request that this litigation be transferred to the Northern District of Georgia. The Court begins by setting forth the standards which must to applied to resolve any motion to dismiss for want of personal jurisdiction.

In *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir.1998), the Sixth Circuit restated the procedures to be employed when a defendant moves to dismiss an action, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for want of personal jurisdiction:

> The procedure for determining jurisdiction, and the standard of review on appeal, are clearly defined in this circuit:
>
> > The case law establishes a settled procedural scheme to guide trial courts in the exercise of this discretion. If it decides that the motion can be ruled on before trial, the court may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion [leading either to the preparation and submission of affidavits or serving as a predicate for an evidentiary hearing]; or it may conduct an evidentiary hearing on the merits of the motion.
>
> *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989) (quotation marks omitted).

Ordinarily, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Ibid.* That standard does not apply in this case, however, because (although there was discovery) there was no evidentiary hearing on the jurisdiction question. The lack of such a hearing mandates a specific standard for weighing the evidence:

> When ... a district court rules on a jurisdictional motion to dismiss ... without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.... To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.
>
> Furthermore, a court ... does not weigh the controverting assertions of the party seeking dismissal....

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996) (emphasis, citations, and quotation marks omitted); *see Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 792–93 (6th Cir.1996) (favoring interpretation expressed at *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 987. (6th Cir.1992) (Boggs, J., dissenting)); *Serras*, 875 F.2d at 1214.

We have explained elsewhere why this relatively light standard for a plaintiff in this situation is appropriate: "Any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Serras*, 875 F.2d at 1214. Although at first glance this appears to be a lopsided standard, the defendant has adequate recourse against a plaintiff who "merely [files] a written affidavit [asserting] jurisdictional facts":

> First, a defendant who alleges facts that would defeat the court's personal jurisdiction can invoke the court's discretion to order a pretrial evidentiary hearing on those facts. If the written

---

Defendant indicated that it would be filing a motion seeking dismissal on the basis of lack of personal jurisdiction. The Court established an expedited briefing schedule on Defendant's then anticipated motion. *See* Doc. # 9.

submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing, and to order discovery of a scope broad enough to prepare the parties for that hearing. At this stage, the burden on the party asserting jurisdiction quite properly increases. She must now establish that jurisdiction exists by the same standard that would obtain if the matter were deferred to trial: the preponderance of the evidence.

*Ibid.* (citations omitted). Furthermore, [the defendant] can raise jurisdictional arguments during the trial as well. It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction. *See Conti*, 977 F.2d at 991 (Boggs, J., dissenting).

As a final consideration, we would not use this standard if the reason for not having an evidentiary hearing was that there was no "real dispute" as to the facts or to the extent of discovery. *International Technologies Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir.1997); *Conti*, 977 F.2d at 980. If there was no such dispute, it would be a waste of resources to conduct an evidentiary hearing, but we would not prejudice defendants because of this desire for efficiency. In such cases, plaintiffs face the same burden [at trial] as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence.

*Id.* at 1271–72. Herein, it was not necessary for the Court to conduct an evidentiary hearing on the Defendant's motion, since there is no "real dispute" concerning the jurisdictional facts and, further, given that the Plaintiff has failed to establish a *prima facie* case of personal jurisdiction.[2]

In support of its motion, the Defendant has submitted the affidavit of Jake David Rothschild ("J.D. Rothschild"), the Defendant's Chief Executive Officer, who states that the Defendant's sole place of business is in Atlanta, Georgia. Defendant has a total of four employees, all of whom work within the Atlanta metropolitan area. Those employees do not travel outside of that area or make telemarketing calls to areas outside of the Atlanta area. Until November, 1998, the Defendant's sole method of distributing its products was through direct wholesale sales to retail outlets, principally within the Atlanta area. No such sales were made to customers in the State of Ohio. In November, 1998, the Defendant contracted with Yahoo, Inc., an Internet service provider with offices in California, to host the Defendant's Internet web site. As a result, since November, 1998, anyone with access to the Internet has been able to place orders with the Defendant, directly from that potential customer's home, regardless of where that home might be. The Defendant's move to this new method of marketing has been somewhat less than a rousing success. Through the date that J.D. Rothschild executed his affidavit, July 9, 1999, the Defendant had received three orders, totaling $55.65, via the Internet. Those orders were placed by customers in Wisconsin, Kansas and Maryland (in other words, no customer in Ohio had placed an order with the Defendant, by using the Internet). In January, 1999, the Defendant also began to sell its products through the Atlanta Gourmet Showcase, located at the Atlanta Merchandise Mart. In addition, customers may order the Defendant's products by using an "800" number, which appears on its labels and on its web site. The Defendant has also distributed catalogs of its products in a some eastern states; however, no catalogs have been distributed within Ohio.

Defendant and its predecessors have been marketing hot chocolate and other products under the "J.D. Rothschild" name, since September, 1991. During that period of time, no employee, representa-

---

**2.** In other words, construing the evidence before it in the manner most favorable to the Plaintiff, that evidence could not support the exercise of personal jurisdiction.

tive or agent of the Defendant or its predecessors has sold goods in or shipped goods to the State of Ohio. In addition, neither the Defendant nor its predecessors has advertised the sale of products in any Ohio or national publication that would have been distributed within this state.

In its Reply Memorandum (Doc. # 12), the Defendant states that, after it raised the issue of personal jurisdiction, it received, for the first time in its history, two orders from residents of Ohio. The Defendant also indicates that those orders were not filled and accuses the Plaintiff of attempting to manufacture personal jurisdiction. In its Surreply Memorandum (Doc. # 14), the Plaintiff concedes that it placed one of those orders, explaining that the order was placed for the purpose of obtaining specimens of Defendant's products, rather than in an effort to manufacture personal jurisdiction. The Plaintiff states, however, that it had no connection with the other order, which was placed by someone employed by Dayton Nut Specialties.

Other than the attempted order by an employee at Dayton Nut Specialties, the Plaintiff has relied exclusively upon the existence of the Defendant's web site, as the basis for this Court's exercise of personal jurisdiction over the Defendant. In particular, the Plaintiff alleges in its Amended Complaint:

> [Defendant] operates within this Judicial District and elsewhere, a retail sales operation which it describes as an "on-line store" known as J.D. Rothschild & Co. web page. The J.D. Rothschild "store" maintains a series of interactive presentations (the Pages) on a computer which is connected to a world wide network known as the Internet. The Pages are configured for advertising, soliciting sales, taking orders and otherwise marketing goods of [Defendant]. The Pages are downloaded upon request to other computers which are likewise connected to the Internet. When the Pages are downloaded[,] they effectively project the J.D. Rothschild web store into the memory and onto the monitor of the receiving computer, irrespective of physical location.

Doc. # 2 at ¶ 3

■ In order to determine whether personal jurisdiction exists over a nonresident defendant, a District Court must apply the law of the state in which it sits, subject to the constitutional limits of due process. *Cole v. Mileti,* 133 F.3d 433 (6th Cir.1998); *CompuServe v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). Normally, this Court will initially examine Ohio's long-arm statute, Ohio Revised Code § 2307.382, and then turn to the principles of due process. However, in its motion, the Defendant relies exclusively upon due process, without arguing that the exercise of personal jurisdiction would offend § 2307.382. Therefore, the Court confines its discussion to due process.[3] The Sixth Circuit has

---

**3.** If it were necessary to decide the issue, the Court would conclude that § 2307.382 does not authorize the exercise of personal jurisdiction over the Defendant. The Plaintiff argues that the Court may exercise jurisdiction over the Defendant in accordance with § 2307.382(A)(4), which authorizes the exercise of same over a defendant who has caused a tortious injury in Ohio by an act or omission which occurred outside of this state, if one of three conditions is met, to wit: the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." Accepting for present purposes that the Defendant caused a tortious injury within this state, by an act occurring outside of it, the evidence would not establish any of three conditions. The Defendant does not regularly engage in or solicit business within Ohio. Nor does it derive any revenue (let alone substantial revenue) from goods or services used or consumed within Ohio. In order for jurisdiction to be appropriate under the other condition, (i.e., where the defendant has "engage[d] in any other persistent course of conduct"), Ohio courts have held that the course of conduct must have occurred within Ohio. *Estate of Poole v. Grosser,* 1999 WL 420059 (Ohio App.1999) (advertising in an Ohio telephone directory does not constitute a persistent course of conduct within this state). Herein, the Defendant has not engaged in any conduct within Ohio. Its web site is on a computer located outside of this state.

adopted a familiar three-part test to assess the propriety of exercising personal jurisdiction, to wit:

> First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 794 (6th Cir.1996); *Southern Machine Co. v. Mohasco Industries Inc.,* 401 F.2d 374, 381 (6th Cir.1968).

*Cole,* 133 F.3d at 436. The Court need only consider the first prong of that test (i.e., has the Defendant purposefully availed itself of the privilege of conducting business within Ohio).

In *CompuServe,* the Sixth Circuit elaborated upon the purposeful availment prong of its three-prong test:

> This court has stated that the question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is "the sine qua non for in personam jurisdiction." [*Southern Machine Co. v. Mohasco Industries Inc.,* 401 F.2d 374, 381–82 (6th Cir.1968)]. The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen [Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)]; *Reynolds [v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1116 (6th Cir.1994), *cert. denied,* 513 U.S. 962, 115 S.Ct. 423, 130

L.Ed.2d 338 (1994) ] ). Courts require purposeful availment to insure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

This requirement does not, however, mean that a defendant must be physically present in the forum state. As the *Burger King Corp.* Court stated, "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* at 476, 105 S.Ct. 2174. Further, as this court noted long ago,

> Physical presence of an agent is not necessary ... for the transaction of business in a state. The soliciting of insurance by mail, the transmission of radio broadcasts into a state, and the sending of magazines and newspapers into a state to be sold there by independent contractors are all accomplished without the physical presence of an agent; yet all have been held to constitute the transaction of business in a state.

*Mohasco Indus.,* 401 F.2d at 382 (footnotes omitted).

89 F.3d at 1263–64.

■ As an initial matter, the Court notes that there is evidence that an employee of Dayton Nut Specialties recently attempted to place an order with the Defendant, which refused to fill that order. Simply stated, the attempt by one resident of Ohio to place one order with the Defendant is too random, fortuitous or attenuated to support a finding that the Defendant has purposefully availed itself of the privilege of doing business within Ohio. Other than that one attempted order, the Plaintiff is requesting that the Court exercise personal jurisdiction over the Defendant,

solely on the basis of the fact that it maintains a web site, which customers in Ohio can utilize to order its products.[4] It bears emphasis that neither the Defendant nor its predecessors have sold products to customers within Ohio, or solicited such sales, through catalogs, distributed within this state, or advertisements appearing in publications that have been circulated in Ohio. Courts have divided cases in which personal jurisdiction is based upon the Internet into three categories. At one end of the spectrum, are cases such as *CompuServe, supra.* Therein, the plaintiff, an Ohio corporation, had entered into contracts with the defendant, an individual who lived in Texas. In accordance with those contracts, the plaintiff provided services to the defendant and allowed him to place software that he had developed on plaintiff's computers, which were located in Ohio. By accessing the plaintiff's computers, other people could purchase the defendant's software. Subsequently, the defendant sent a number of letters to the plaintiff, accusing it of infringing upon his common law trademarks. In response to that letter, the plaintiff brought an action, seeking a declaratory judgment that the defendant did not have valid common law trademarks. After the District Court had dismissed the action for lack of personal jurisdiction, the Sixth Circuit reversed, concluding that the exercise of personal jurisdiction over the defendant was appropriate, because his activities demonstrated that he had purposefully availed himself of the privilege of doing business within the state of Ohio. At the other end of the spectrum are cases in which the defendant's web site is passive (i.e., it merely provides information, without affording anyone the option of using that site to order products or otherwise to interact). Courts have consistently held that personal jurisdiction may not be predicated upon a passive web site, alone. *See e.g., Cyber-*

*sell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir.1997); *Fix My PC, LLC v. N.F.N. Associates, Inc.,* 48 F.Supp.2d 640 (N.D.Tex.1999).

The majority of cases reside in between these two ends of the spectrum. In those cases, the defendant's web site is active, affording the user the opportunity of exchanging information with the host computer (i.e., ordering products over the Internet). A growing body of law holds that a defendant has not purposefully availed itself of the privilege of doing business within the forum state, merely because it has web site on the Internet, which can be utilized by customers within that state to order products. Therefore, that body of law rejects the premise that personal jurisdiction can be based upon the existence of an interactive web site, alone. Rather, to determine whether a defendant has purposefully availed itself of the Privilege of doing business within the forum stats (and, thus, whether personal jurisdiction can be exercised), courts have examined the level of commerce between the defendant and customers in the forum state. *See e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997); *Scherr v. Abrahams,* 1998 WL 299678 (N.D.Ill.1998); *Origin Instruments Corp. v. Adaptive Computer Systems, Inc.,* 1999 WL 76794 (N.D.Tex.1999); *ESAB Group v. Centricut LLC,* 34 F.Supp.2d 323 (D.S.C.1999); *Barrett v. Catacombs Press,* 44 F.Supp.2d 717 (E.D.Pa.1999); *Millennium Enterprises, Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907 (D.Or.1999); *Rannoch, Inc. v. Rannoch Corp.,* 1999 WL 450824 (E.D.Va.1999); *International Star Registry of Illinois v. Bowman–Haight Ventures, Inc.,* 1999 WL 300285 (N.D.Ill.1999). In *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.1998), the Ninth Circuit commented:

---

4. Of course, the Defendant also has an "800" number, which residents of Ohio could (but have not) used to order products. Courts have held that the existence of such a number, alone, is not sufficient to warrant the

exercise of personal jurisdiction over a nonresident defendant. *See e.g., Fix My PC, LLC v. N.F.N. Associates, Inc.,* 48 F.Supp.2d 640 (N.D.Tex.1999).

We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another.... [T]here must be "something more" to demonstrate that the defendant directed his activity toward the forum state.

Id. at 1322 (citation omitted).

Although there is some authority to the contrary,[5] this Court finds persuasive the above cited cases, holding that the existence of a web site which customers in the forum state can utilize to order products, alone, is not sufficient to justify the exercise of personal jurisdiction. If such a web site were sufficient, then any defendant that has an "800" telephone number, which customers in the forum state could access to place orders, would be subject to personal jurisdiction, regardless of the commercial activity in which the defendant had engaged within the forum state. Herein, the Defendant has engaged in *no* commercial activity within Ohio; therefore, the Plaintiff has not shown the type of commercial activity or the "something more," which would permit this Court to conclude that the Defendant has purposefully availed itself of the privilege of conducting business within Ohio.

■ Accordingly, based upon the foregoing, the Court concludes that the Plaintiff has failed to make a *prima facie* showing that the Defendant has purposefully availed itself of the privilege of doing business within Ohio. Therefore, this Court may not, consistent with principles of due process, exercise personal jurisdiction over the Defendant. That conclusion leaves the question of whether to dismiss this litigation or to transfer it, as the Plaintiff has requested. Under 28 U.S.C. § 1406(a),

this Court, in its discretion and in the interest of justice, may transfer this litigation, in lieu of dismissing same, to a district "in which it could have been brought."[6] Although § 1406 is phrased in terms of transfers to cure defects in venue, that statute authorizes the transfer of an action when personal jurisdiction is lacking, regardless of whether venue is proper. *Taylor v. Love,* 415 F.2d 1118 (6th Cir. 1969), *cert. denied,* 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77 (2nd Cir.1978). Herein, the Plaintiff has requested that the Court transfer this litigation, instead of dismissing same. Rather than arguing that a transfer would fail to serve the interest of justice, the Defendant requests, in its Reply Memorandum, that the Court either dismiss or transfer this litigation. Doc. # 12 at 11. In the absence of any argument from the Defendant that a transfer would not serve the interest of justice, this Court concludes that it is appropriate to transfer this litigation. By dismissing this litigation, the Court would merely require the Plaintiff to file it once again in the appropriate court.

Accordingly, the Court sustains the Defendant's Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 10), to the extent that, with that motion, the Defendant argues that this Court cannot exercise personal jurisdiction over it. However, the Court overrules that motion to the extent that the Defendant seeks dismissal of this litigation. Rather, pursuant to 28 U.S.C. § 1406(a), the Court transfers this litigation to the United States District Court for the Northern District of Georgia, Atlanta Division.

The captioned cause is hereby ordered terminated upon the docket records of the

---

5. For instance, in *Quality Solutions, Inc. v. Zupanc,* 993 F.Supp. 621 (N.D.Ohio 1997), the court concluded that the mere existence of a web site, with which residents of Ohio could interact, coupled with advertisements in a trade journal that was circulated in this state, was sufficient to warrant the exercise of personal jurisdiction over the defendant.

6. Given that the Defendant's sole place of business is in Atlanta, Georgia, it could not be questioned that this litigation could have been brought in the United States District Court for the Northern District of Georgia. *See* 28 U.S.C. § 90(a).

United States District Court for the Southern District of Ohio, Western Division, at Dayton.