**John Peter MacDONALD, et al., Plaintiffs,**

v.

**NAVISTAR INTERNATIONAL TRANSPORTATION CORP., et al., Defendants.**

No. C–3–99–280.

United States District Court, S.D. Ohio, Western Division.

March 9, 2001.

Thomas D. Robenalt, Cleveland, OH, for plaintiffs.

Kelly Carbetta Scandy, Douglas W. Rennie, Montgomery Rennie & Jonson, Cincinnati, OH, Laurie J. Nicholson, Cincinnati, OH, Bruce M. Allman, Cincinnati, OH, for defendants.

RICE, Chief Judge.

The instant litigation stems from an automobile accident in Alberta, Canada.[1] On June 17, 1997, Plaintiff John Peter MacDonald ("MacDonald") was delivering furniture for his employer, Bennett's Furniture Galleries, Ltd. ("Bennett's"), using a 1995 International 4000 series truck, VIN # 1HTSCAAM5SH681335. While MacDonald was standing behind the truck, which was parked and stationary, the truck's brake suddenly failed, and the truck began to roll down the road at a high rate of speed. Plaintiff suffered permanent injuries, including broken vertebrae and paralysis.

On June 16, 1999, Plaintiffs MacDonald and the Workers' Compensation Board of Alberta ("WCB")[2] initiated this litigation against Navistar International Transportation Corporation and other various John Doe Defendants (Doc. # 1). They set forth three causes of action, to wit: 1) state law negligent and strict liability products liability claims, based on defective creation, manufacture, design, promotion, marketing, distribution and supply of the vehicle, and failure to provide reasonable warnings or instructions; 2) a state law claim of breach of the implied warranties of fitness and merchantability; and 3) a state law claim of misrepresentation. Plaintiffs further alleged that Defendants acted with malice, thus entitling them to punitive damages. On February 10, 2000, Plaintiffs amended their Complaint, naming Ryder Truck Rental Canada ("Ryder Canada" or "Defendant"); Ryder System, Inc.; Ryder Truck Rental, Inc., dba Ryder Transportation Services; Ryder TRS, Inc.; Ryder Truck Rental, L.T.; Ryder Truck Rental I, L.P.; Ryder Truck Rental II, L.P; Ryder Truck Rental

---

1. The following facts are taken from Plaintiffs' Amended Complaint (Doc. # 13).

2. The Complaint states that the WCB has provided workers' compensation benefits to MacDonald, including, but not limited to, medical expenses in excess of $500,000, and that it is subrogated to MacDonald's rights, pursuant to section 17 of the Workers' Compensation Act of Canada.

I, L.L.C.; Ryder Truck Rental II, L.L.C.; and Ryder Truck Rental III, L.L.C., as Defendants (Doc. # 13). On July 5, 2000, Plaintiffs voluntarily dismissed, without prejudice, all of the Ryder Defendants, with the exception of Ryder Canada (Doc. # 21).[3]

Pending before the Court is the Motion of Ryder Canada to Dismiss, for lack of personal jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(2) (Doc. # 24). For the reasons assigned, that Motion is SUSTAINED.

In its Motion, Ryder Canada contends that this Court lacks personal jurisdiction over it, because it is a foreign defendant and the exercise of such jurisdiction would violate due process. In support of its argument, the company asserts that it lacks any significant contacts with Ohio. According to Fintan Mealia, the Customer Development Manager for Ryder Canada, Ryder Canada and Bennett's Furniture Gallery entered into a Truck Lease and Service Agreement, dated June 10, 1994 (Def.'s Ex. ¶ 1–2). To supply Bennett's with a truck, on July 11, 1994, Ryder Canada ordered a 1995 International 4000 series truck, VIN # 1HTSCAAM5SH681335, from Navistar International Transportation Company, located in Ontario, Canada (id. ¶ 4). Ryder Canada received the truck from Navistar in December of 1994, and delivered the truck to Bennett's on January 19, 1995 (id. ¶ 5). All service on the vehicle occurred in Alberta, Canada (id. ¶ 7). Mr. Mealia further indicates that Ryder Canada is not licensed to do business in the State of Ohio, does not transact business in Ohio, and has no business contacts with Ohio (id. ¶¶ 8–9). Based upon this evidence, Ryder Canada contends that the Court may not exercise personal jurisdiction over it.

When considering a motion to dismiss for lack of *in personam* jurisdiction prior to trial, the court can determine the motion on the basis of affidavits alone or by conducting an evidentiary hearing. *Serras v. First Tennessee Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989). Furthermore, the court may permit discovery to aid it in deciding the motion, whether based on affidavits, *International Techs. Consult., Inc. v. Euroglas,* 107 F.3d 386 (6th Cir.1997) (plaintiff was ordered to respond to motion challenging personal jurisdiction after completion of discovery on jurisdictional issues; no evidentiary hearing held), or by conducting an evidentiary hearing, *Serras,* 875 F.2d at 1214 (court may "order discovery of a scope broad enough to prepare the parties for [the evidentiary] hearing"). The court has discretion to select which method to follow, and will only be reversed for abuse of that discretion. *Michigan Nat'l Bank v. Quality Dinette, Inc.,* 888 F.2d 462, 466 (6th Cir.1989); *Serras,* 875 F.2d at 1214.

If the court determines that the motion can be decided without a hearing, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). The plaintiff, however, bears the "relatively slight" burden of establishing a *prima facie* case of personal jurisdiction. *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168–69 (6th Cir.1988). If the plaintiff demonstrates the existence of a *prima facie* case of personal jurisdiction over the defendant, after reading the pleadings and

---

**3.** Plaintiffs indicate that they dismissed these Defendants, based on representations by counsel for Ryder Canada that it was the only entity involved with the subject vehicle and, therefore, Ryder Canada was the only proper Defendant in this action.

the affidavit(s) so construed, the defendant's motion will be denied, notwithstanding contrary allegations made by the defendant. *Serras,* 875 F.2d at 1214.[4]

█ In the present case, Plaintiffs have provided the Court with affidavits and other materials to support their argument that the exercise of personal jurisdiction over Ryder Canada is proper. In the exercise of its discretion, the Court has chosen to resolve the jurisdictional issue on the basis of the pleadings, affidavits, and other evidence before it. Consequently, the Court will construe the parties' evidence in a light most favorable to Plaintiffs (the party against whom the motion is directed) and against Ryder Canada. With the foregoing guidelines in mind, the Court turns now to its analysis of the *in personam* jurisdiction issue.

██ In deciding whether this Court may exercise personal jurisdiction over the Ryder Canada, the Court must look to the law of the forum state. *E.g., Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 376 n. 2 (6th Cir.1968). If the forum state's long-arm statute reaches the defendant, the court must then decide whether the defendant's due process rights would be infringed by the exercise of jurisdiction over him. *E.g., Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996). Although Ryder Canada cites to Ohio's long-arm statute, its argument focuses on whether the exercise of personal jurisdiction over it would comport with due process, under either specific jurisdiction or general jurisdiction. Accordingly, the Court will follow Defendant's analytical framework and will likewise turn to the due process requirement.

### A. General Jurisdiction

█ The Sixth Circuit has recognized that the due process limits on personal jurisdiction make a distinction between general jurisdiction and specific jurisdiction. *E.g., Third National Bank of Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989); *Donatelli v. National Hockey League,* 893 F.2d 459 (1st Cir.1990). With general jurisdiction, a defendant's "contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant[,] even if the action is unrelated to the defendant's contacts with the state." *WEDGE Group,* 882 F.2d at 1089. However, even though the due process clause allows for general jurisdiction, Ohio's long-arm statute precludes general personal jurisdiction in this forum. *Smith v. Turfway Park,* Case No. 3:97–145, Doc. # 13 (Mar. 13, 1998)(Rice, J.). Thus, in order for this Court to exercise personal jurisdiction over Ryder Canada, the Court may not rely on general jurisdiction but, rather, must conclude that specific jurisdiction over Defendant is proper.

█ Assuming, *arguendo,* that Ohio's long-arm statute permits general jurisdiction, Plaintiffs argue that this Court may exercise general jurisdiction over Ryder Canada, based on the fact that it is a wholly-owned subsidiary of Ryder Transportation Corporation, which has continuous and systematic contact with the State of Ohio. It is well-established that a parent company may be subject to personal jurisdiction in a state where its subsidiary is doing business, provided that the corporate separation is fictitious, the parent has held the subsidiary out as its

---

4. It is axiomatic that the use of materials outside the pleadings, in ruling on a motion to dismiss for alleged lack of *in personam* jurisdiction, is permissible and does not convert the motion into one directed to the merits of the litigation, *i.e.,* one for summary judgment.

agent, or the parent has exercised undue control over the subsidiary. *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 296 (6th Cir.1964). However, the mere fact that a parent company has a wholly-owned subsidiary in the forum state does not render the parent company subject to the personal jurisdiction of the courts therein. *Id.* "So long as the parent corporation and its subsidiary maintain separate and distinct corporate entities, the presence of one in a local forum may not be attributed to the other." *WEDGE Group, Inc.*, 882 F.2d at 1093 (concurring opinion). In *WEDGE Group, Inc.*, the Sixth Circuit held that a parent corporation, Wedge, was subject to personal jurisdiction in Tennessee, based on the actions of The Rogers Companies, Inc. ("TRC"), a Tennessee company and its wholly-owned subsidiary. Although Wedge had never directly conducted business, held title to property, or retained employees in Tennessee, the Court recounted five grounds that established that Wedge had purposefully availed itself of the privilege of conducting activities in Tennessee, to wit: 1) TRC was a wholly-owned subsidiary of Wedge; 2) Wedge was not a mere passive owner of TRC; rather, it was actively involved in TRC's management; 3) Wedge had entered into an agreement with TRC, under which it shared income tax liability with the TRC; 4) Wedge officers had participated in negotiations with TRC and the plaintiff; and 5) Wedge had entered into an agreement with TRC and the plaintiff, and the contract was executed in Tennessee. Thus, the parent company's own actions and the actions of its subsidiary, over which it exhibited management control, were sufficient to subject it to the personal jurisdiction of courts within Tennessee.

Although a parent company may, under certain circumstances, be subject to personal jurisdiction based on the contacts of its subsidiary, this Court has found few cases that have addressed whether the converse is true, namely whether a *subsidiary* may be subject to personal jurisdiction based on the contacts of its *parent* corporation. The few federal courts that have done so have required a fictitious or agency relationship between the parent and the subsidiary. *Blount v. Peerless Chemicals (P.R.), Inc.*, 316 F.2d 695 (2d Cir.1963). Some courts have applied a stricter standard, concluding that "where a foreign subsidiary and a local parent have failed to maintain separate corporate identities, there is no personal jurisdiction over the foreign subsidiary without a showing that the subsidiary was 'present' in the forum through its direction and manipulation of local parental activities." *Henry v. Offshore Drilling (W.A.) Pty., Ltd.*, 331 F.Supp. 340, 343 (E.D.La.1971); *Turan v. Universal Plan Inv. Ltd.*, 70 F.Supp.2d 671, 675 (E.D.La.1999) ("Holding a subsidiary responsible for the corporate activities of its parent corporation would offend 'traditional notions of fair play and substantial justice'[,] because a subsidiary would be liable for activities for which they were not responsible in locations in which they lack meaningful contacts.")

Assuming that this Court should apply herein the same standard that the Sixth Circuit has employed when determining whether a court may exercise personal jurisdiction over a parent company based on the contacts of its subsidiary (as opposed to the stricter standard adopted in the Eastern District of Louisiana), Plaintiffs have not provided evidence to support a *prima facie* case that personal jurisdiction over Ryder Canada is proper, based on the contacts of its parent company. In support of its argument, Plaintiffs have attached excerpts from the deposition testimony of Mr. Samuel Tanner, a representative of Navistar. In addressing Ryder Canada's corporate structure, Mr. Tanner

stated that he believed that Ryder Canada has an American parent corporation, located in Miami, Florida (Pls' Ex. 5 at 36). Mr. Tanner further indicated that he has been told by the Canadian General Manager that he reports to people in the United States (Pls' Ex. 5 at 37). According to affidavit of Mr. Robenalt, counsel for Plaintiffs, counsel for Ryder Canada confirmed that the company is, in fact, a wholly-owned subsidiary of Ryder Transportation Services, located in Florida (Pls' Ex. 4 ¶ 9).

In addition to the above-mentioned evidence, Plaintiffs have also provided an affidavit from attorney Kimberly A. Coleman (Pls' Ex. 6). In that document, she states that on September 27, 2000, she contacted Ryder Truck Rental at the telephone number 1–800–463–9337, which appears in the Ameritech Yellow Pages for Cleveland, Ohio. She questioned the Ryder Truck Rental representative as to whether she could rent a truck in the Province of Alberta, Canada. Ms. Coleman was provided two toll-free telephone numbers, one to rent a truck for consumer purposes and the other to rent a truck for commercial purposes. She was further informed that the two numbers applied to any rentals in the United States or Canada.

 As a threshold matter, for Ryder Canada to be subject to general jurisdiction based on its parent company's contacts, Plaintiffs must present evidence that Ryder Transportation Services is subject to general jurisdiction in Ohio (again, assuming, *arguendo*, general jurisdiction to be permissible in this forum). Plaintiffs' only evidence in this regard is the affidavit of Ms. Coleman regarding her ability to obtain truck rental information for Canada, upon calling a toll-free telephone number, which was listed in Ohio. Numerous courts to address the issue have held that toll-free telephone listings, without more, are insufficient contacts upon which to subject a company to suit. *See, e.g., Rothschild Berry Farm v. Serendipity Group LLC,* 84 F.Supp.2d 904 (S.D.Ohio 1999)(Rice, J.), *citing Estate of Poole v. Grosser,* 134 Ohio App.3d 386, 731 N.E.2d 226, 1999 WL 420059 (1999)(advertising in an Ohio telephone directory does not constitute a persistent course of conduct within this state); *Bradley v. Mayo Foundation,* 1999 WL 1032806 (E.D.Ky. Aug.10, 1999)(maintenance of 51 toll-free telephone lines and two internet web sites should not subject the defendant to personal jurisdiction). Accordingly, Plaintiffs have not submitted any evidence from which the Court may conclude that it may exercise general jurisdiction over Ryder Transportation Services and, through that company, Ryder Canada.[5]

 Even if the Court could conclude that Ryder Transportation Services was subject to this Court's general personal jurisdiction, the fact that Ryder Canada is a wholly-owned subsidiary of Ryder Transportation Services does not, by itself, subject Ryder Canada to the jurisdiction of this Court based its parent company's contacts in Ohio. Although Mr. Tanner has stated that the Canadian General Manager of Ryder Canada reports to people in the United States (Pls' Ex. 5 at 37), this evidence is insufficient to suggest that Ryder Transportation Services directed and managed Ryder Canada's operations, such that the Court could conclude that Ryder Transportation Services exercised undue control over Ryder Canada, or that the corporate separation between the companies is fictitious. Moreover, Ms. Coleman's statement that she was provided two toll-

---

**5.** Plaintiffs have not submitted any additional evidence which indicate the nature and extent of Ryder Transportation Services' contacts with the State of Ohio.

free telephone numbers, which she could call to rent a truck anywhere in the United States or Canada, is insufficient for this Court to conclude that Ryder Canada was an agent of its parent company (or vice versa), and was held out to the public as such. Accordingly, even if Ohio permitted the exercise of general jurisdiction, Plaintiffs have not presented evidence that Ryder Transportation Services has "continuous and systematic" contacts with Ohio, thus allowing personal jurisdiction over it on the basis of general jurisdiction. In addition, Plaintiffs have failed to present evidence that the relationship between that company and Ryder Canada is such that this Court could exercise personal jurisdiction over Ryder Canada, based on the contacts of its parent company. Because the Court may not exercise general jurisdiction over Ryder Canada, the Court now turns to whether that Defendant is subject to suit in this forum, based on specific jurisdiction.

B. *Specific Jurisdiction*

 The Sixth Circuit has established a three-part test for determining whether a court can exercise specific personal jurisdiction over a nonresident defendant. *Southern Machine Co.*, 401 F.2d at 381; *Nationwide*, 91 F.3d at 794. *First*, "the defendant must purposefully avail himself of the privilege of conducting activities within the forum state." This requirement ensures that defendants are not subjected to jurisdiction based solely upon random or attenuated contacts, or the unilateral activity of another party. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "Jurisdiction is proper under the purposeful availment requirement where 'the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state.'" *Reynolds v. International Amateur Ath-*

*letic Fed'n*, 23 F.3d 1110, 1116 (6th Cir.), *cert. denied*, 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994)(quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174). The mere fact that a defendant entered into a contract with the plaintiff in the forum state does not constitute purposeful availment. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir.1997). "[T]he defendant's conduct and connection with the forum must be of a character that he or she 'should reasonably anticipate being haled into court there.'" *Id.* (*quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

 *Second*, "the cause of action must arise from the defendant's activities there." *Third*, the acts by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant fundamentally fair. *Southern Machine Co.*, 401 F.2d at 381. When a court finds that a defendant has purposefully availed itself of the privilege of conducting activities within Ohio and the cause of action arose from that contact, it is presumed that the assertion of personal jurisdiction is proper. *Cole*, 133 F.3d 433; *see American Greetings Corp.*, 839 F.2d at 1170 (when first two elements met, an inference arises that the third is also met). A court must consider several factors in this context, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *American Greetings Corp.*, 839 F.2d at 1169–70.

 In their Complaint, Plaintiffs have not alleged any facts which would support a *prima facie* case of specific personal jurisdiction over Ryder Canada. In

addition, they have neither argued in their memorandum nor provided evidence to support a *prima facie* showing that the exercise of specific jurisdiction over Ryder Canada is proper. There is no evidence that Ryder Canada reached out to Ohio to conduct business. The fact that reservations for vehicles in Canada could be made via a telephone call from Ohio is insufficient to support a finding that Ryder Canada purposefully availed itself of the privilege of conducting business in Ohio. *See Rothschild, supra.* Moreover, this litigation arises from the failure of a vehicle which, although manufactured in Ohio, was purchased by Ryder Canada from Navistar International Corporation Canada.[6] The fact that Navistar might have sent the truck directly from its Springfield, Ohio, facility to Ryder Canada's agents in Canada does not cause this litigation to arise from any actions of Ryder Canada in Ohio.[7] In addition, given the accident's location in Alberta, that all of Ryder Canada's service to the vehicle occurred in Alberta, and the lack of evidence to support showings that Ryder Canada purposefully availed itself of the privilege of conducting business in Ohio and that this action arises out of Defendant's conduct in Ohio, the Court concludes that the exercise of specific personal jurisdiction would violated fundamental fairness. In summary, Plaintiffs have failed in their burden of making a *prima facie* showing that the Court may exercise specific personal jurisdiction over Ryder Canada. Accordingly, Defendant's Motion to Dismiss, for lack of personal jurisdiction (Doc. # 24), must be SUSTAINED.

For the foregoing reasons, Ryder Canada's Motion to Dismiss, for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2) (Doc. # 24), is SUSTAINED.

---

6. Although Plaintiffs state in their memorandum that Ryder Canada purchased the subject vehicle from Navistar in Ohio (Doc. # 29 at 12), the evidence from both parties contradict that assertion. Both Mr. Mealia and Mr. Tanner state that the vehicle was sold to Ryder Canada from Navistar in Canada. See Pls' Ex. 5 at 17(stating that the vehicle at issue in this litigation was manufactured by Navistar International Transportation Corporation, and it was then sold to Navistar International Corporation Canada, a wholly-owned subsidiary of Navistar International Transportation Corporation); Def's Ex. 1 ¶ 4 (Ryder Canada ordered the truck from Navistar International Transportation Company in Ontario, Canada). Thus, it is undisputed that the vehicle, although manufactured in Ohio, was purchased by Ryder Canada from Navistar's Canadian subsidiary.

7. Mr. Tanner indicated that the truck was likely sent directly from Springfield, Ohio, to Coaldale, Alberta, Canada, to a company named Intercontinental Truck Body Ltd (*id.* at 26), which Plaintiffs asserts was an agent of Ryder Canada.